IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Clifton Banks,<br><br>      Plaintiff,<br><br>   v.<br><br>Dr. Timothy Chamberlain, Dr. Merrill Zahtz, Kristina Mershon, and Dr. Nancy Lank,<br><br>      Defendants. | Case No. 3:18-cv-50282<br><br>Honorable Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clifton Banks, an inmate at Dixon Correctional Center (DCC), brings this suit alleging violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. He adds a state law claim of intentional infliction of emotional distress. As defendants, he names Dr. Timothy Chamberlain, Dr. Nancy Lank, Dr. Merrill Zahtz, and Kristina Mershon. Drs. Chamberlain and Lank now move the Court for summary judgment on the limited issue of whether Banks exhausted his administrative remedies as to them. For the below reasons, that motion [97] is granted in part and denied in part.

I.    Background

Banks, an inmate at DCC, began serving his sentence in December 2010.[1] Dkt. 99-1, Ex. A, at 2. Defendant Dr. Timothy Chamberlain served as the Medical

---

[1] Although Banks' apparently began his incarceration at Danville Correction, only his incarceration at Dixon Correction is relevant to this suit.

1

Director at DCC from August 3, 2015, through May 12, 2017. Dkt. 99-2, Ex. B, at 2. Defendant Dr. Nancy Lank served in that same role on a temporary basis from September 12, 2018, to April 25, 2019. Dkt. 99-3, Ex. C, at 2 (referring to her position as a travelling medical director). Notably, Banks' initial complaint, which was filed on August 23, 2018, did not name Dr. Lank. She was added in Banks' amended complaint on January 25, 2019. *Compare* dkt. 1, *with* dkt. 22.

At some point in 2016, Banks began experiencing abdominal pain. Though the parties' fact statements do not discuss the early treatment, grievances from 2018 show that he was treated with antacids and Tylenol, but he complained that no one knew what was wrong and that he wanted to be seen by a gastrointestinal (GI) specialist. His grievances also show that he was given an ultrasound and a rectal scan. Because of the severity of the pain, Banks explained that he sometimes went days without eating. Dkt. 99-4, at 32. Though Banks' grievance explains that Dr. Chamberlain was responsible for his earlier treatment, Dr. Zahtz appears to have taken over after Dr. Chamberlain left his position. In his March and April grievances, Banks specifically discusses his treatment with Dr. Zahtz. *Id.* at 32–34. Those grievance also reveal that Banks was apparently suffering from gallstones, though Dr. Zahtz did not believe Banks needed surgery. *Id.* at 34. Undeterred, Banks explained that the medication was not working and that he was experiencing severe pain; he wanted to be seen by a GI specialist. After Banks filed the original complaint (before the amendment), Dr. Lank began treating him as well. Based on

2

Banks' October and November grievances, she apparently also believed that Banks' pain was caused by gallstones. *Id.* at 13–14.

The question at this stage, however, is whether Banks' exhausted the administrative remedies available to him through the grievance process. Drs. Chamberlain and Lank have moved this Court for summary judgment on that question. Dkt. 97. Dr. Zahtz and Kristina Mershon have not joined that motion. This order only addresses the summary judgment motion on the affirmative defense, not the merits of Banks' claims.

## II. Analysis

Drs. Chamberlain and Lank move the Court for judgment as a matter of law on the theory that Banks failed to exhaust his available administrative remedies. Dkt. 97. Because failure to exhaust administrative remedies is an affirmative defense, defendants bear the burden of proof. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). Defendants meet that burden only if they show that no dispute of material fact exists and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Furthermore, the Court construes the facts and inferences in the light most favorable to the nonmoving party. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). If the movant bears the burden of proof at trial, it must make a showing sufficient for the Court to hold that no reasonable trier of fact could find other than for the moving party and must establish all elements of the claim or defense to warrant judgment as a matter of law. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). In that circumstance, the movant must come forward

with evidence on each element that would require judgment as a matter of law if uncontroverted at trial. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

This Court typically requires *Pavey* hearings for any dispute of material fact regarding whether inmates have exhausted available administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see also Daval v. Zahtz*, No. 3:19-cv-50147, 2021 U.S. Dist. LEXIS 97314, at *9 n.3 (N.D. Ill. May 24, 2021). Because of the fact-heavy nature of exhaustion arguments, the issue is not well-suited for summary judgment. *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015). Still, if no dispute of material fact exists, Defendants may be entitled to judgment as a matter of law.

The Prison Litigation Reform Act (PLRA) requires exhaustion of administrative remedies: "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, because Banks is housed in an Illinois Department of Corrections (IDOC) facility, he must abide by the grievance process established by Illinois law. That process was codified in 20 Ill. Admin. Code §§ 504.800 *et seq.*; *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (superseded by statute on other grounds). The Seventh Circuit requires strict adherence to the exhaustion requirements. *Hernandez*, 814 F.3d at 842 ("Federal courts strictly enforce this requirement, and a prisoner fulfills this duty by adhering to 'the specific procedures and deadlines

established by the prison's policy.'") (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)).

IDOC inmates must file grievances within sixty days of the incident giving rise to the grievance. 20 Ill. Admin. Code § 504.810(a) (noting an exception when the inmate can show good cause for untimeliness). The inmate must include facts regarding each aspect of the issue, "including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." § 504.810(c). But if the inmate does not know the names of those involved, then the inmate must instead include "as much descriptive information about the individual as possible." *Id.* The process also requires that inmates be informed of the grievance procedure "at the admitting facility." § 504.810(e).

The normal (nonemergency) procedure requires the inmate to first submit the grievance to a grievance counselor. § 504.810(a). After the inmate submits the grievance to a grievance counselor, the grievance is then sent to a grievance officer, who "consider[s] the grievance and report[s] his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance." § 504.830(e). The Chief Administrative Officer (CAO) then reviews the report and recommendation and notifies the inmate in writing of the CAO's decision. *Id.* The inmate, after receipt of the CAO's decision, may appeal that decision to the Director, via the Administrative Review Board (ARB). § 504.850(a). That appeal must be filed within thirty days of the CAO's decision. *Id.* The Director then reviews the decision of the ARB and must make a

5

final determination within six months of receiving the appeal. § 504.850(e). On making that decision, the Director sends a written copy to the inmate. *Id.*

In contrast, if the inmate believes the concern is an emergency, the inmate may check the box on the grievance form indicating the emergent nature of the problem. § 504.840. Those requests are forwarded directly to the CAO for review. *Id.* The CAO then determines whether the grievance represents "a substantial risk of imminent personal injury or other serious irreparable harm to the offender." § 504.840(a). If the CAO determines that the inmate's grievance is not an emergency, then the inmate "shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." § 504.840(c). The section of the code that addresses emergencies is silent regarding how to appeal the CAO's decision that the grievance is not an emergency. *See id.* Still, the Defendants admit that such appeals are covered by the next section, § 504.850(a), which explains the appeals process generally. Dkt. 107, ¶ 7.

### A. Dr. Chamberlain

Dr. Chamberlain argues that Banks failed to exhaust his administrative remedies regarding Dr. Chamberlain's medical care. He argues that Banks did not filed any grievances about his care during his tenure. He contends that even if the filed grievances complained about Dr. Chamberlain's treatment of Banks, those grievances were not timely. Dkt. 98, at 7.

Doctor Chamberlain served as the Medical Director at DCC from August 3, 2015, until May 12, 2017. Dkt. 107, ¶ 2. Absent good cause, inmates are required to

6

submit grievances within sixty days of the incident giving rise to the grievance. 20 Ill. Admin. Code § 504.810(a). Because Dr. Chamberlain last day of work at DCC was May 12, 2017, any grievance about his care of inmates would have to have been filed within sixty days of that date (July 11, 2017), unless Banks can point to a good cause for untimeliness. Banks responds that the March 6, 2018, grievance was exhausted as to Dr. Chamberlain because the grievance was not denied on untimeliness grounds, notwithstanding the fact that it was untimely. Dkt. 105, at 2.

Banks is correct that when the prison treats the grievance "as timely and resolves it on the merits, the federal judiciary will not second-guess that action." *Riccardio v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Dr. Chamberlain does not quibble with that point. Rather, he contends that the March 6, 2018 grievance had nothing to do with him.[2] He asserts that Banks' only reference to him in that grievance was "fleeting" and complained about Dr. Zahtz rather than his specific treatment of Banks' abdominal pain. Dkt. 109, at 3. Dr. Chamberlain continues that the grievance response specifically noted that the grievance was related to Banks' March 5, 2018 appointment with Dr. Zahtz. *Id.* at 4.

These arguments are not inconsistent with each other; neither party is wrong about the law. Banks is correct that untimely grievances about a person are nonetheless exhausted when they are addressed on the merits instead of deemed untimely. *Riccardio*, 375 F.3d at 524. Not surprising, Chamberlain is correct that the grievance in question must still complain about the defendant's conduct. 20 Ill.

---

[2] Dr. Lank does not make a similar argument.

Admin. Code § 504.810(c). That must be true. A defendant cannot grieve about one thing and claim to have exhausted his remedies as to something or someone else. *See Hildreth v. Butler*, 960 F.3d 420, 425 n.2 (7th Cir. 2020) (discussing that the grievances were not about prescription refill delays).

In Banks' March 6, 2018 grievance, he explained that he had been complaining about abdominal pain since 2016. Dkt. 99-4, at 31. He saw doctors and nurse practitioners, and nothing had worked. He further explained that the only administered test to date was an ultrasound and rectal scan. On the back of the grievance form, Banks further asserted that he saw a general surgeon about his gall bladder in February 2018 and that he went to sick call on March 5, 2018. At that sick call, the nurse took him to see Dr. Zahtz right away because she did not know what else to do. Banks then asked Dr. Zahtz why he was seen by the general surgeon and asked to be seen by a GI specialist because "no one else seems to know what's wrong with me." *Id.* He further noted on the grievance form that he had only been seen by Dr. Chamberlain and Nurse Practitioner Mershon, and one other doctor that gave him the rectal scan. He explained that this visit was his first with Dr. Zahtz. Dr. Chamberlain ordered the first ultrasound and told Banks that the problem was likely the gall bladder, but then he had stopped working at DCC. *Id.*

The grievance officer responded to Banks' March 6, 2018 grievance by explaining that he was "reasonably satisfied Inmate Banks has access to health care and recommend[ed] the grievance be denied." *Id.* at 30. The CAO then

concurred. *Id.* The ARB then affirmed that decision, noting that the grievance was in relation to Banks' visit with Dr. Zahtz on March 5, 2018. *Id.* at 29.

To be sure, IDOC officials did not deny the March 6, 2018 grievance as untimely. Thus, Dr. Chamberlain cannot now rely on those grounds. *Riccardio*, 375 F.3d at 524. If the grievance complained about Dr. Chamberlain's treatment, then it was enough to exhaust Banks' administrative remedies. But the response indicates why the grievance was not denied as untimely; the ARB viewed the grievance as complaining about the outcome of Banks' March 5, 2018 visit with Dr. Zahtz and not about Dr. Chamberlain's treatment. Dkt. 99-4, at 29. And that was a reasonable belief. Banks explained that he had been in pain for two years and none of the previous treatments had worked. But he explained this treatment history to show why he needed to be sent to a GI specialist. That is the relief he requested. Although he mentions his treatment with Dr. Chamberlain, and explains what Dr. Chamberlain did to address the pain (ordered an ultrasound and opined that the problem was his gall bladder), he never complains about Dr. Chamberlain's treatment or suggests that he had previously asked Dr. Chamberlain for a referral to a specialist. Nothing in his grievance indicates that Banks was complaining about Dr. Chamberlain's treatment. Dkt. 99-4, at 31–32.

Thus, the March 6, 2018 grievance did not exhaust Banks' remedies related to Dr. Chamberlain because the grievance was not about Dr. Chamberlain's treatment. Banks' grievance was filed about ten months after Dr. Chamberlain stopped providing care at DCC; eight months after the grievance process deadline.

Although it mentioned Dr. Chamberlain's prior care, the grievance merely requested a specialist. It did not complain about any previous failures to refer Banks to a specialist. Because the grievance did not complain about Dr. Chamberlain's care, the Court cannot expect prison officials to reject the complaint on timeliness grounds. To hold otherwise would require every grievance denial to include claims that the grievance is untimely as to all previous doctors.

Thus, the March 6, 2018 grievance did not exhaust Banks' administrative remedies as to Dr. Chamberlain's treatment. Because the record contains no other grievances related to Dr. Chamberlain's treatment of Banks, the Court must grant Dr. Chamberlain's motion for summary judgment.

**B. Dr. Lank**

Dr. Lank began her temporary tenure as Traveling Medical Director after Banks filed this suit. She served in that role from September 12, 2018, until April 25, 2019. Dkt. 107, ¶ 3. Banks filed the original complaint on August 23, 2018, before Dr. Lank began working at DCC. Dkt. 1. She asserts that this is dispositive of whether Banks exhausted his administrative remedies because he must do so before filing suit. Therefore, she argues that the only two grievances filed before Banks instituted this suit (those filed in March and April) did not exhaust remedies related to Dr. Lank's treatment. Dkt. 98, at 8–9. But that argument is off the mark. Dr. Lank was not a named defendant in the original complaint. She was added later by amendment on January 25, 2019. And Banks filed grievances that were both during her tenure and before the January 25 amendment. Dkt. 99-4, 12–20.

10

As Banks points out, the Seventh Circuit in *Barnes v. Briley* addressed this question. 420 F.3d 673 (7th Cir. 2005). There, after an investigation by plaintiff's newly appointed counsel revealed new claims against different defendants, he filed grievances against those new defendants and exhausted that process before filing an amended complaint. *Id.* at 678. The same is true here. Banks first filed this suit before Dr. Lank started working at DCC. Banks then later filed grievances that mentioned her treatment. On amendment, Banks then added Dr. Lank to this action. Thus, based on *Barnes*, Banks' grievances are timely. He filed them before the amended complaint. The question is whether Banks exhausted those grievances before filing his amended complaint on January 25, 2019.[3] Dkt. 22.

In his response brief, Banks asserts that he filed emergency grievances on October 4 and November 7, 2018 regarding Dr. Lank's medical treatment and that he exhausted his remedies as to those grievances. Dkt. 105, at 8. Banks argues that he was in extreme pain when he filed those grievances and that the Dr. Lank has not shown that his grievances were not emergencies. *Id.* at 8–9. Effectively, Banks attacks the validity of the CAO's finding that those grievances were not emergencies. Banks fails to illuminate how the validity of the CAO's decision is relevant to whether he exhausted his remedies. He contends, however, that he then appealed the decision to the ARB because he believed that was the proper

---

[3] Dr. Lank has not developed any argument that the October and November grievances fail to properly complain about her treatment. Thus, the Court does not address that question. *Betco Corp. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (declining to address the merits of an argument that plaintiff waived in the district court by failing to develop).

11

procedure. *Id.* at 9. This belief is not unreasonable given the directives DCC provided him regarding the grievance process.

IDOC changed its grievance process in 2017 "to require that when the warden rules that a grievance is not an emergency, the inmate must use the standard grievance process." *Jones v. Bayler*, 834 F. App'x 283, 284 (7th Cir. 2021). The Seventh Circuit explained the same in *Williams v. Wexford Health Sources, Inc.*: "Thus, had Williams's grievances been filed after the amendment took effect, it would be clear that he was required to resubmit his grievances under the normal procedure and complete the full three-stage process in order fully to exhaust his available remedies." 957 F.3d 828, 832 (7th Cir. 2020).

This case, however, explains the still-existing ambiguity in the process. The amendment seems to strengthen one point: the CAO's decision that an emergency was not substantiated is not necessarily a decision on the merits of the grievance. The decision is just what it says it is; that the CAO does not believe the issue to be an emergency, and so the grievance needs to go through the normal channels. Because that decision is only that the grievance is not an emergency, an inmate does not exhaust the substance of the grievance without filing the grievance in the normal way. But what happens if the inmate believes the CAO was wrong; that the grievance is a legitimate emergency? The plain text of the "emergency" section of the administrative code is not clear. The text only indicates that inmates "may submit the grievance as non-emergent." 20 Ill. Admin. Code § 504.840(c).

Banks contends that he appealed the CAO's decision to the Administrative Review Board (ARB) because he believed he was experiencing an emergency. He argues that the rules specifically allow him to do exactly that. Though the text of the emergency procedures section of the code is silent on the matter, Banks points to the Defendants Local Rule 56.1 statement of fact:

> An inmate may file a grievance as an emergency grievance pursuant to 20 Ill. Admin. Code 504.840. [Exhibit D, ¶ 4]. In such a case, the prisoner may submit his grievance directly to the prison's Chief Administrative Officer. [*Id.*] If the CAO determines that an inmate's grievance does not constitute an emergency, the CAO shall return the grievance to the inmate noting that the grievance does not constitute an emergency and instruct the inmate to re-file the grievance as a non-emergent grievance. [*Id.*] and 20 Ill. Admin. Code 504.840(c). *If a prisoner believes that his emergency grievance was improperly deemed to be a non-emergent issue by the prison's CAO, the prisoner may appeal his emergency grievance directly to the Administrative Review Board for further review pursuant to 20 Ill. Admin. Code 504.850(a).* [Exhibit D, ¶ 4].

Dkt. 107, ¶ 7 (emphasis added).

In other words, the Defendants admit that the grievance procedures allow Banks to do exactly what he did. They point to § 504.850(a), the appeals section of the code. That section does not clearly address this situation; when an inmate wishes to appeal a decision that the grievance is not an emergency. It merely says that an inmate may appeal an unsatisfactory decision by the CAO and that such an appeal must be received by the Administrative Review Board within thirty days. *Id.* The text of that section does not expressly differentiate between normal-course decisions and decisions that an emergency request is not an emergency. But the Defendants say that Banks can do what he did, and the Court takes them at their word. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (discussing the

13

Northern District's Local Rule 56.1 and holding appellant to its admission under that Rule). Rule 56.1 statements of fact, responses, and even the failure to respond are judicial admissions that are binding on a party. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993); *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp. 2d 989, 995–96 (N.D. Ill. 2007).

So, under the judicial admissions in this case, the admittedly proper procedure was for Banks to appeal the CAO's decision to the ARB. He did that and was not wrong for it.[4] Given that he was following the proper procedure, the response for the ARB was perplexing. Banks filed grievances on October 4 and 9, and November 7, 2018 (he actually filed two on November 7). Dkt. 99-4, 12–20. All were filed as emergency requests. He appealed them to the ARB. The ARB's response instructed Banks to provide the original written grievance and the grievance counselor's response, which is a document that obviously did not even exist. It also instructed him to provide the grievance officer's response (again a document that did not exist) and the CAO's response. *Id.* at 12, 17. In other words, the ARB's response told Banks to file his grievance through the normal, nonemergency procedure. But that response makes little sense given that Banks was permissibly appealing the CAO's decision that his grievance was not an emergency. Under the admittedly proper procedure, the expected response would be either an affirmance or reversal of the CAO's decision regarding whether the

---

[4] Confusingly, Dr. Lank's reply asserts that Banks "inappropriately sent his grievances direct to the ARB to try and challenge the determination that his medical grievances did not constitute emergencies." Dkt. 109, at 9. That argument is unavailing in light of her own LR 56.1 statement that such an appeal is part of the process.

14

emergency status was substantiated. Thus, the ARB apparently did not follow the IDOC procedures.

In reply, Dr. Lank does not address this point. Although Banks points to the LR 56.1 fact statement that he was permitted to appeal the CAO's decision, Dr. Lank merely rests on the argument that Banks was required to resubmit the grievance in the normal manner, was told to do so by the ARB, and failed to follow those instructions. Dkt. 109, 8–13.

The PLRA requires that inmates exhaust "available" remedies. 42 U.S.C. § 1997e(a). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Unlike when an inmate forfeits the grievance process (by not following the rules), the process becomes unavailable when the actions of prison officials cause the process that exists on paper to become "unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *see also Collier v. Caraway*, No. 2:14-cv-0365, U.S. Dist. LEXIS 97908, at *12 (S.D. Ind. July 27, 2016). And a remedy becomes unavailable when prison officials prevent the inmate from using it. *Id.* (quoting *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)). That is what happened here.

The Court holds that Dr. Lank has failed to meet her burden of establishing Banks' failure to exhaust his available remedies. First, the undisputed facts show that Banks was permitted to appeal the CAO's decision that his grievance was

15

nonemergent. Dkt. 107, ¶ 7. He attempted to do that. If the ARB had responded to that appeal and explained why his grievance was not an emergency, Banks would have then been required resubmit the grievance through the normal procedure as outlined in 20 Ill. Admin. Code § 504.830. But it did not. Instead, the ARB's response was that he needed to refile the grievance through the normal process, which sounds in reality like ignoring his right to appeal the CAO's decision that his grievance was not an emergency. In other words, Dr. Lank admits that such an appeal was available but that the ARB failed to recognize that Banks could appeal the CAO's decision and instead just referred Banks to the normal process. Far from Banks forfeiting the grievance process, the facts paint a picture in which IDOC's conduct rendered the grievance process unavailable, thereby excusing Banks' need to further exhaust. *See Kaba*, 458 F.3d at 684.

The Court could stop there, but instead proceeds to point out another reason why the grievance process was rendered unavailable on these facts. First, IDOC did not make the process clear. Dr. Lank explains that "inmates are made aware of the rules and regulations of the institution and IDOC through an orientation manual and oral presentation," which "includes the process for filing grievances." Dkt. 98, at 4. In their response to Banks' Local Rule 56.1 fact statement, Dr. Lank attached the manual. Dkt. 108-1 (labeled "General Population Orientation Manual"). On page thirty-one of the manual, under the section titled "Grievance Procedures for Inmates (DR 504 F)," the manual lays out the grievance process, which mostly matches the language in 20 Ill. Admin. Code § 504.800 *et seq. Id.* at 31. That

16

manual, which Dr. Lank claims is how IDOC informs inmates of the process, makes no mention of refiling the CAO's nonemergency decision in the normal manner. Assuming the correct manual is attached, IDOC apparently did not update the manual after the 2017 amendment to the grievance process. Sure, the ARB's response to Banks told him to submit the forms he could only have obtained through the normal process, but such a response would no doubt be confusing to an inmate that was not properly informed about the procedure, or told the wrong thing. And at least one of the ARB's responses instructed Banks to follow "DR 504 F," which is the section of the manual that is silent on the matter. Dkt. 99-4, at 17.

The Seventh Circuit takes a strict approach to the requirement that inmates exhaust their available administrative remedies before filing suit. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). However, for that strict approach to work, IDOC must maintain "clear administrative schemes for processing prison grievances." *Reid v. Balota*, 962 F.3d 325, 330 (7th Cir. 2020). That need for clarity is frustrated when prison officials fail to follow their own admitted process and when they fail to properly inform inmates what the process is.

### III. Conclusion

For these reasons, the motion for summary judgment [97] is granted in part and denied in part. Dr. Chamberlain has met his burden of establishing Banks' failure to exhaust his available administrative remedies as to Dr. Chamberlain.

Thus, he is dismissed from this action without prejudice.[5] Dr. Lank, however, has not met that burden, so the motion as to her is denied.

Date: June 21, 2021

                                                                                 Honorable Iain D. Johnston
                                                                               United States District Judge
                                                                             Northern District of Illinois
                                                                                    Western Division

---

[5] Though Defendants' briefing urges the Court to dismiss with prejudice, the Seventh Circuit explained in *Ford v. Johnson* that "*all* dismissals under § 1997e(a) should be without prejudice." 362 F.3d 395, 401 (7th Cir. 2004) (emphasis in original).

18